**FEDERAL DEPOSIT INSURANCE CORPORATION, as Manager of the Federal Savings and Loan Insurance Corporation Resolution Fund, Plaintiff,**

v.

**Angelique O. STAHL, Ira C. Hatch, Ross P. Beckerman, W. George Allen, Ronald M. Bergeron, Sr., Allan E. Baer, and Ralph F. Cheplak, Defendants.**

No. 91–7122–CIV.

United States District Court, S.D. Florida.

July 29, 1993.

Bruce Charles King, Popham, Hiak, Schnobrich & Kaufman, Miami, FL, for plaintiff FDIC.

John W. McLuskey, Miami, FL, for defendant Hatch.

Thomas C. O'Brien, O'Brien & O'Brien, Ann Arbor, MI, Katherine W. Ezell, Podhurst, Orseck, Josefberg, Eaton, Meadow, Olin & Perwin, P.A., Miami, FL, for defendant Bergeron.

Edward M. Kay, Ft. Lauderdale, FL, for defendant Stahl.

Ross P. Beckerman, pro se.

Michael Hursey, Allen, Hursey & Lucas, Ft. Lauderdale, FL, for defendant Allen.

Ralph F. Cheplak, pro se.

## ORDER DENYING DEFENDANTS' SEVERAL MOTIONS TO DISMISS

RYSKAMP, District Judge.

THIS CAUSE came before the Court upon the Defendants' several motions to dismiss the complaint, all of which were submitted in the alternative as, or together with, motions for summary judgment.

The Plaintiff is the Federal Deposit Insurance Corporation ("FDIC"), as manager of Federal Savings and Loan Insurance Corporation ("FSLIC") Resolution Fund. The Defendants, as described in the Complaint, are certain former directors, officers, employees, and attorneys of Broward Federal Savings and Loan Association ("Broward Federal"). The FDIC filed a Complaint in the instant action to recover damages to Broward Federal allegedly caused by breaches of fiduciary duty and the negligence of certain former officers, directors, and employees of Broward Federal and the legal malpractice of Broward Federal's general counsel.

### I.  *The History of Broward Federal*

Broward Federal opened for business on November 8, 1978. Less than four years later, by early 1982, it had begun to incur operating losses. The Complaint alleges that "in a July 1982 report, the Federal Home Loan Bank Board (FHLBB) examiners criticized lending deficiencies, inadequate appraisals, inadequate loan underwriting, and unauthorized loans". Complaint ¶ 37. The Complaint alleges that the Board of Directors, including certain of the named Defendants, disregarded the regulatory criticism and failed to remedy the underwriting deficiencies.

As a result of poor financial condition, Broward Federal and the Defendants entered a Supervisory Agreement with the FHLBB on or about September 18, 1984. Pursuant to this agreement, the FHLBB agreed to forbear initiating any proceedings against Broward Federal and the Defendants, and Broward Federal agreed to comply with the provisions of the Agreement,

including those provisions requiring strict, detailed loan underwriting.

On November 15, 1985, a second FHLBB Bank Examiner's report concluded that Broward Federal was insolvent, in part due to loan losses. In December of 1988 the FHLBB authorized the supervisory conversion of Broward Federal from a Federal Mutual Savings and Loan Association to Federal Stock Savings and Loan Association. The stock of the new Association was acquired by California Real Estate Inventory, Inc. Through an "Assistance Agreement" between FSLIC and California Real Estate, FSLIC acquired all claims which Broward Federal had against its officers, directors, employees and attorneys. On August 8, 1989 all assets and liabilities of the FSLIC were transferred to the FSLIC Resolution Fund pursuant to 12 U.S.C. § 1821a. FDIC is manager of that fund and now owns all claims that could have been brought against former officers, directors, employees and attorneys of formerly FSLIC insured institutions. Plaintiff filed a Complaint on December 26, 1991. Motions to dismiss were filed and have been fully briefed.

## II. Standard for Motion to Dismiss

In considering a motion to dismiss the Court is required to accept all well-pled allegations of the complaint as true. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984). The allegations within the complaint are construed in the light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle the plaintiff to relief. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

## III. Elements of Plaintiff's Causes of Action

Count I is for breach of fiduciary duty as to improper loans and Count II is for breach

of fiduciary duty as to management. In short, the Plaintiff asserts that underwriting and approval of certain loans took place in violation of the Supervisory agreement, the Insurance Regulations and the Bank's own policy. The Complaint alleges that as a direct and proximate result of the Defendants' wrongful acts the Bank was forced to foreclose on loans and sell the property at a substantial loss. The Complaint also alleges that the Defendants authorized unreasonably high salaries for employees and directors of Broward Federal, that the Directors failed to exercise reasonable oversight, and that the Directors were involved in various transactions which included self-dealing and conflicts of interest.

The Court infers that the legal foundation for the counts of breach of fiduciary duty is derived from Florida common law[1]. *Farber v. Servan Land Co., Inc.,* 662 F.2d 371, 377 (5th Cir.1981); *Everdell v. Preston,* 717 F.Supp. 1498, 1501 (M.D.Fla.1989); *Snead v. United States Trucking Corp.,* 380 So.2d 1075, 1078 (2d Fla. DCA 1980). *See also Tieder v. Little,* 502 So.2d 923, 925–926 (3d Fla. DCA 1987) (elements of breach of fiduciary duty and negligence).

■ The law with regard to breach of fiduciary duty has not changed dramatically since the time the alleged negligent acts occurred. Florida common law defines the relationship of a director and of an officer to the corporation and its stockholders as that of a fiduciary and requires a director to act with fidelity and the utmost good faith. *Farber v. Servan Land Co., Inc.,* 662 F.2d 371, 377 (5th Cir.1981) (interpreting Florida law); *Everdell v. Preston,* 717 F.Supp. 1498, 1501 (M.D.Fla.1989); *Snead v. United States Trucking Corp.,* 380 So.2d 1075, 1078 (2d Fla. DCA 1980).

Count III is for negligence based on, as asserted by Plaintiff in the opposition to the motions to dismiss, Fla.Stat. § 607.111(4) which states,

---

1. The Complaint alleges a list of duties that the Directors owed to Broward Federal but it does not state or allege Florida common law or any other legal foundation for these duties. However, it is clear to the Court that an action under Florida common law was intended and is cognizable.

A director shall perform his [or her] duties as a director, including his [or her] duties as a member of any committee of the board upon which he [or she] may serve, in good faith, in a manner he [or she] reasonably believes to be in the best interests of the corporation, and with such care as an ordinarily prudent person in a like position would use in similar circumstances.

Fla.Stat. § 607.111(4) (1987).

■ Count IV is for attorney malpractice as to Ira C. Hatch, Jr. The Court also presumes that the Plaintiff based its claim for attorney malpractice Florida common law. Florida Courts have adopted the elements of an attorney malpractice action from *Maryland Casualty Co. v. Price,* 231 F. 397 (4th Cir.1916).[2] *Weiner v. Moreno,* 271 So.2d 217, 219 (3d Fla. DCA 1973); *Mayo v. Engel,* 733 F.2d 807, 811 (11th Cir.1984).

In total, Plaintiffs allege $40,000,000 in money damages as a result of the Defendant's breach of fiduciary duties and the negligent approval of certain loans.

### IV. *Defendants' Motion to Dismiss*

#### A. *Arguments of the Parties*

The Defendant Directors argue that this Court should retroactively apply the standard of gross negligence set out in the Financial Institutions Reform, Recovery and Enforcement Act, ("FIRREA"), 12 U.S.C. § 1821(k) to the facts of this case. Once retroactively applied, Defendants argue that FIRREA preempts state law in the area of bank director liability. In the alternative, should the Court not retroactively apply FIRREA, the Defendants argue that Florida law prior to FIRREA's enactment was a standard of gross negligence. Fla.Stat. § 607.0831(1)(b)(4) (1990) and Fla.Stat. § 607.1645 (1987). Finally, should the Court apply a standard of ordinary negligence from 607.111(4), Defendants argue that when combined with the business judgment rule, the resulting standard is one of gross negligence.

The Plaintiff FDIC argues that the appropriate statute to derive the standard of negligence is Fla.Stat. § 607.111(4), which sets forth a standard of ordinary negligence; this standard was not statutorily altered until 1987 when the legislature enacted Fla.Stat. § 607.1645. The negligence complained of in the instant action occurred between October of 1984 and January of 1986. The Defendants' motion to dismiss requires this Court to decide which law shall apply to this case—the law at the time of the negligence, the law at the present time, or some elements of both.

#### B. *The application of FIRREA section 1821(k)*

■ FIRREA § 1821(k) provides in the pertinent part,

A director or officer of an insured depository institution may be held personally liable for monetary damages in any civil action by, on behalf or, at the request or direction of the Corporation, which action is prosecuted wholly or partially for the benefit of the Corporation ... for gross negligence, including any similar conduct or conduct that demonstrate a greater disregard of a duty of care (than gross negligence) including intentional tortious conduct, as such terms are defined and determined under applicable State law. Nothing in this paragraph shall impair or affect any right of the Corporation under other applicable law.

FIRREA § 1821(k) (1989).

If this Court were to retroactively apply FIRREA, the Court finds that there would be a conflict between FIRREA's standard of negligence and the standard set out in Florida statutory law before 1987. However, because the Court ultimately concludes that Plaintiff may prosecute a claim utilizing a Florida standard of negligence, and therefore the retroactive application of FIRREA would not change the Court's ruling on this motion to dismiss, the Court need not decide possible retroactive application of FIRREA.[3]

---

**2.** The elements of attorney malpractice as defined in that case are: (1) the attorney's employment, (2) the attorney's neglect of a reasonable duty, and (3) that such negligence resulted in and

was the proximate cause of loss to the client. *Maryland Casualty Co. v. Price,* 231 F. at 401.

**3.** Notwithstanding this conclusion, the Court has analyzed the retroactive application of FIRREA.

## C. Pre-emption of Florida Law

The Defendant Directors argue that FIR-REA § 1821(k) preempts other state and federal causes of action based on negligence. Plaintiff FDIC argues based on the final sentence of § 1821(k) that state law causes of action survive the enactment of 12 U.S.C. § 1821(k).

Those circuit courts which have spoken on the question have uniformly given effect to the "saving language" of that statute and held that § 1821(k) does not preempt state law which applies a higher standard of negligence than gross negligence. *FDIC v. Canfield,* 967 F.2d 443 (10th Cir.1992); *FDIC v. McSweeney,* 976 F.2d 532 (9th Cir.1992); *FDIC v. Gonzalez–Gorrondona,* 833 F.Supp. 1545 (S.D.Fla.1993). *See also, FDIC v. Mintz,* 816 F.Supp. 1541 (S.D.Fla.1993).

Thus, the standard of negligence will be determined by the state law that controlled at the time the alleged negligent acts were committed. The standard of negligence at the time of the alleged acts in the instant case was set forth in *International Insurance Co. v. Johns,* 685 F.Supp. 1230, 1237–1238 (S.D.Fla.1988), *aff'd,* 874 F.2d 1447 (11th Cir.1989). As the *International Insurance* Court outlined, the Florida standard for negligence prior to 1987 was based on Fla. Stat. § 607.111(4) which stated that directors must perform their duties

> in good faith, in a manner reasonably believed to be in the best interest of the corporation, and with such care as an ordinary prudent person in a like position would use under similar circumstances.

*International Ins. Co.,* 685 F.Supp. at 1237. *International Insurance Co.* recites legislative history confirming that the Act passed in 1987 created greater protection from liability for corporate officers and directors, 685 F.Supp. at 1238, n. 4, and held that the 1987 statute applies only to cases accruing after the date of the act. *Id.* The Court finds that the standard of ordinary negligence is the appropriate standard to apply in this

case. The Plaintiff's Complaint sufficiently alleges claims of ordinary negligence.[4]

## D. Application of the Business Judgment Rule

The Defendant Directors assert, alternatively, if the standard of negligence is ordinary negligence, the business judgment rule mandates, in effect, a standard of gross negligence. *International Ins. Co.* defines the business judgment rule to mean that

> the law will not hold directors liable for honest errors, for mistakes of judgment, when they act without corrupt motive and in good faith.... [I]n order to come within the ambit of the rule, directors must be diligent and careful in performing the duties they have undertaken; they must not act fraudulently, illegally, or oppressively, or in bad faith.

*International Ins. Co.,* 685 F.Supp. at 1238. *See also Amerifirst Bank v. Bomar,* 757 F.Supp. 1365, 1376 (S.D.Fla.1991).

■ The application of the business judgment rule for the purposes of a motion to dismiss is questionable. *FDIC v. Musacchio,* 695 F.Supp. 1053 (N.D.Cal.1988) (business judgment rule a question of fact, wholly inappropriate for consideration on a motion to dismiss). Furthermore, the business judgment rule may not apply depending on the circumstances of the alleged acts. *Joy v. North,* 692 F.2d 880 (2d Cir.1982) (the business judgment rule does not apply in cases where the business decision is tainted by a conflict of interest, is so egregious as to amount to a no-win decision, or results from an obvious and prolonged failure to exercise oversight and supervision).

■ The Court finds that applying the business judgment rule to these motions to dismiss would be inappropriate. As such, Plaintiff has sufficiently met the burden of alleging a cause of action based on ordinary negligence. However, this Court finds that, even if the business judgment rule were to

---

Applying the test from *Bradley v. School Board of Richmond,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974) and its progeny, the Court finds that retroactive application would have been appropriate.

4. Even if the Court applied a gross negligence standard, the facts as alleged rise to a level of gross negligence.

be applied at this stage, so as to exact a higher standard of pleading upon the Plaintiffs, allegations in the Complaint are either exceptions to the business judgment rule or rise to the level of gross negligence.

## V. *Conclusion*

The Court holds that the appropriate standard of negligence, at this stage of the pleadings, is one of ordinary negligence. Defendants may argue the application of the business judgment rule at the summary judgment stage.

ORDERED AND ADJUDGED that Defendants' Motion to Dismiss the Complaint is DENIED. Pursuant to FED.R.CIV.P. 12(a), the Defendants must file an answer within ten days of notice of the Court's action.

DONE AND ORDERED.